12245

MARTIN v. TRAXLER REAL ESTATE COMPANY *ET AL.*

(139 S. E., 165)

1. STIPULATIONS—AGREEMENT TO "SUSPEND" ACTION, ALLOWING IT TO STAND "STATU QUO" FOR SIX MONTHS, DOES NOT PREVENT PROCEEDING WITH SUIT AFTER SIX MONTHS.—Agreement between parties to "suspend" action, allowing it to stand *"statu quo"* for six months, does not deprive plaintiff of right to proceed with the suit after six months; defendants not having paid their obligation.

2. BILLS AND NOTES—NOTICE OF DISHONOR IS WAIVED BY INDORSER'S PROMISING TO PAY.—Indorser, by agreeing after maturity to pay the note, waives notice of dishonor.

3. BILLS AND NOTES—INDORSER HAVING FULL KNOWLEDGE NEED NOT BE GIVEN NOTICE OF DISHONOR.—It is not necessary to give notice of dishonor to indorser who has full knowledge of all that notice could give.

4. BILLS AND NOTES—PRESENTMENT FOR PAYMENT HELD NOT NECESSARY TO CHARGE INDORSER OF NOTE MADE AND ACCEPTED FOR HIS BENEFIT (NEGOTIABLE INSTRUMENTS ACT, § 80).—Under Negotiable Instruments Act, § 80 (Civ. Code 1922, § 3731), note having been made and accepted for benefit of indorser, presentment for payment was not necessary to charge him; he having no reason to expect it would be paid if presented.

5. BILLS AND NOTES—PAYMENT OF ATTORNEY'S FEES HELD NOT EXCUSED BY SUSPENSION OF ACTION UNDER AGREEMENT AND FAILURE THEREAFTER TO MAKE FURTHER DEMAND.—Suspension of action on note for six months under agreement of the parties therefor, and failure after that time to make further demand for payment, does not excuse defendants from payment of attorney's fees, provided for by the note.

6. BILLS AND NOTES—$1,000.00 ATTORNEY'S FEES, ALLOWED IN ACTION ON NOTE, HELD NOT EXCESSIVE, IN VIEW OF RESISTANCE.—Where note provided for 10 per cent. attorney's fee, and it with interest amounted to nearly $18,000.00, and at every stage plaintiff was delayed and resisted in his efforts to collect, $1,000.00 fee allowed was not excessive.

Before MAULDIN, J., Greenville, July, 1926.   Affirmed.

Action by J. Robert Martin against the Traxler Real Estate Company and another.   Decree for plaintiff, and defendants appeal.

*Mr. C. S. Bowen,* for appellants, cites: *A personal action once suspended by the voluntary act of the party entitled to it is forever gone and discharged:* 1 C. J., Sec. 446. *Extension of time of payment postpones the accrual of a cause of action:* 8 C. J., Sec. 626; Id., 447, Sec. 650, 660; 13 C. J., 596, Sec. 615; 41 C. J., Sec. 1041. *Form of agreement is immaterial:* 8 C. J., Sec. 630. *Extension of time discharges security:* 32 Cyc., 204-205. *Mutual promises of forbearance sufficient to support each other:* 13 C. J., Sec. 201; 6 S. C., 485, 490. *Failure to perform new contract does not revive the old:* 13 C. J., Sec. 615, p. 596; 47 S. C., 430; 93 N. Y., 353. *When a principal debtor promises to pay out of specific funds, he is not personally liable:* 8 C. J., Sec. 214; 46 N. E., 103; 57 A. S. R., 479. *Allowance of attorney's fees:* 96 S. C., 357. *Appellant corporation can enforce contract:* 89 S. C., 11; 82 S. C., 284; 21 L. R. A. (N. S.), 1029; 34 S. C., 196; 30 S. C. L., 268; 44 Am. Dec., 254. *In equity cases, in voluntary issues triable by a jury, the jury must pass upon the issues of fact:* 63 S. C., 266; 54 S. C., 353, 359. *Nonsuits in equity are not unknown:* 126 S. C., 763; 128 S. C., 155, 161; 29 S. C., 49.

*Messrs. Hodges & Leatherwood,* for respondent, cite: *"Suspended":* 118 Pac., 999; 34 L. R. A. (N. S.), 758; 27 A. & E. Enc. L., 558. *Contract must be breached before a cause of action thereon will arise:* 39 S. C., 491. *Nonsuit improper in a case in equity:* 83 S. C., 446; Id., 447. *Presentment not necessary in order to charge the person primarily liable on the instrument:* Sec. 3766, Code. *Notice not necessary in case at bar:* 16 S. E., 653; 126 S. C., 224; 3 R. C. L., 1180; 1 Rich., 397; 133 S. C., 305. *Notice may be waived:* Sec. 3733, Code; 3 R. C. L., 1185; Id., 1242, Sec. 469; Sec. 3760, Code. *Presentment presumed:* 2 Nott & McCord, 479; 1 Rich., 369; 4 Strob., 296; 14 S. C., 247; 131 S. C., 265. *Concurrent findings of master and Circuit Court not disturbed unless against preponderance of evidence:* 131 S. C., 267; 135 S. C., 173.

August 12, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The plaintiff's complaint, served in May, 1925, alleged the execution of a promissory note by Traxler Real Estate Company, a corporation, through D. B. Traxler, its president, which was payable on December 7, 1924, with interest payable semiannually from date; the indorsement of this note by D. B. Traxler, personally, at the time of its delivery to plaintiff; the execution and delivery of a mortgage of certain real estate, called "Sunny Slope," conveyed to the corporation by the plaintiff, to secure the payment of the note, the mortgage being executed for the corporation by Traxler, its president, and McManus, its secretary; certain payments made on the debt; demand for payment and nonpayment and notice of dishonor to the indorser on December 8, 1924.

The original answer of the defendant is not in the record. The amended answer (in some respects it is a supplemental answer) sets up denial of demand for payment, protest, and notice of dishonor to the defendants, and that, after the suit was started, there was an agreement, in writing, by the defendants and the plaintiff for an extension of the time of payment on the note sued on, and for a suspension of the plaintiff's action. Plaintiff, on April 12, 1926, procured an order allowing him to amend his complaint by alleging that if there was a failure to make demand and give notice of dishonor to the indorser, Traxler, that Traxler waived such failure by acknowledging his liablity to pay the note, and agreeing to make payment thereof.

By consent, the cause, for all purposes, was referred to E. Inman, Esq., master in equity for Greenville County. That officer, after having heard the testimony and arguments of counsel, submitted his report, which shows that he went ably and carefully into the law and facts involved. His report was favorable to all the claims of the plaintiff.

Upon the defendants excepting to the report of the master, the cause was heard in the Court of Common Pleas for Greenville by Hon. T. J. Mauldin, presiding Judge, who, in a short order, concurred in the findings ' and holdings of the master, and made a decree conformably to his report. Both defendants have appealed to this Court.

The issues raised will be disposed of as they are stated, without the needless stating of the several exceptions.

1    The first question is as to the effect of an agreement, set forth in certain letters passing between the plaintiff and the defendant, Traxler, on August 31, 1925, some months after the suit had been instituted, and presumably after defendants had filed their original answer. In his letter to Mr. Traxler, plaintiff wrote:

"* * * I am perfectly willing to suspend action on mortgage of Sunny Slope real estate, allowing the same to stand *statu quo* for six months, provided you, with the approval of Mr. Norwood, extend payment on Jenkinson note for three months; each with the privilege of anticipating."

To that letter, Traxler replied, quoting from plaintiff's letter the words we have quoted from that letter, and said: "I am glad to have this letter from you, and accept your proposition.  * * *"

The extension of the time of payment for the Jenkinson note, given by plaintiff, for 90 days from its maturity, was arranged with Mr. Norwood; and later, before the next maturity, was paid by plaintiff. Nothing was done by defendants as to the payment of their obligation to the plaintiff. The record does not show when further steps were taken in the litigation. The master found, however, and there seems to be no question as to that finding by either side:

"The record shows that plaintiff, in accordance with said agreement, took no further action in this case until after the expiration of said time."

The contention of the appellants, as it appeared to the master, was that the "six months' agreement" not only suspended the present action, but that it barred any further prosecution thereof, and, in addition, the agreement relieved the indorser from further liability on the note. While appellants' counsel does not state his claim in the language used by the master in setting it forth, we understand the position to be the same here as that insisted upon in the Court below.

In order to determine what the plaintiff and Mr. Traxler had in mind at the time their respective letters were written, it seems necessary to ascertain the definitions of the words "suspend" and *"statu quo."*

In his law dictionary, Black defines the word "suspension" as "a temporary stop of a right, of a law and the like."

Among the many definitions of the verb "suspend" in Webster's New International Dictionary is this:

"To cause to cease for a time from operation or effect; as, to suspend the habeas corpus act; to suspend the release."

*"Statu quo"* or *"status quo"* has many varied meanings in common parlance. When parties to a lawsuit, however, who are men way above the average in intelligence, especially where one is a lawyer and the other a realtor, express their agreements in legal terms, the Courts should assume that they intend their language to have reference to the legal definitions given it.

In the same edition of Webster's dictionary, *"status quo"* is explained to be "the state in which anything is; the state existing."

Bouvier, in his law dictionary (8th Ed.), says that *"status quo"* is "the existing state of things at any given date."

Reading, then, plaintiff's letter with the definitions before set out in mind, we find that he wrote Mr. Traxler to the effect that he was willing "to stop temporarily, action,

* * * allowing the same (the action) to stand as it then
existed (August 31, 1925) for six months," on certain
conditions, and Mr. Traxler accepted the offered terms.
According to the master and the Circuit Judge, the de-
fendant Traxler carried out the agreement to secure the
extension of the Jenkinson note, and the plaintiff carried
out his agreement to pay that note. Also, according to the
findings of the lower Court, the plaintiff carried out his
promise to "suspend" the action, and allowed it to "stand
*statu quo* for six months." When this was done, and the
defendants had not paid their obligation, plaintiff then, of
course, had the right to proceed with his suit. To sustain
the exceptions along this line, made by the appellants, would
be to practically forbid plaintiffs' in suits on notes and
mortgages from dealing leniently with their debtors, after
action was instituted, either upon or without consideration,
for fear they might lose their legal rights entirely.

The next matter to be considered is the liability of
2    Mr. Traxler as an indorser of the note. The un-
contradicted facts about it, from the plaintiff and
his witness (there being no evidence on the part of the
defendants), are these: plaintiff agreed with Traxler to sell
the latter Sunny Slope. When the time came for the exe-
cution of the deed therefor, and the mortgage to secure
the purchase price, Traxler requested that title be made to
Traxler Real Estate Company, a corporation, to which
plaintiff consented, if Traxler would personally indorse the
note. The due date of the note and mortgage was De-
cember 7, 1924, one year after the date it was made. Trax-
ler told plaintiff that he owned the corporation. There were
conversations between Traxler and the plaintiff between the
time of the execution of the papers and their maturity. In
one instance, in August, 1924, plaintiff, desiring to make a
purchase of property, and not caring to do so unless he
was sure to collect on the note and mortgage he held from
Traxler Real Estate Company, when that fell due, informed

Traxler of his plans, and was told by him to go ahead, that he (Traxler) would "in some way arrange to take it up when due." Before maturity of plaintiff's debt, payments were made on the papers, as follows: $250 on February 25, 1924; $1,000 on March 25, 1924; $250 on June 10, 1924. We suppose these payments were all handled by Traxler, for, in his testimony, plaintiff said: "Except in releasing some lots, which was mere clerical work handled by Mc-Manus (the secretary), my entire transactions were with D. B. Traxler." Several letters passed regarding the note and mortgage, all written by plaintiff, save one, being addressed to Traxler individually. The one exception was a letter sent to Traxler-McManus, another concern with which Traxler was connected, and plaintiff testified that this occurred through error. All the letters to plaintiff were sent by Traxler individually.

Plaintiff, before maturity, placed his papers in a bank for collection. Mr. Winn, the cashier, testified that before they were due Traxler Real Estate Company was given the usual notice; that there was no payment, and he, as a notary public, protested the note for nonpayment on December 8, 1924; that the usual and required notices of dishonor (including one to Traxler) were prepared by him, and placed, in the customary manner, with the bank's other mail for mailing; but the witness could not testify if the notices had been deposited in the post office, or in a box under supervision of the postal authorities.

The master found that under the testimony before him no legal demand was made on the maker of the note, as required by the Negotiable Instrument Law, and no notice of dishonor was given as prescribed in that law. The Circuit Judge concurred therein. There is no appeal by plaintiff from this finding; so we must proceed upon the theory that the required notice of dishonor was not given Mr. Traxler.

After maturity of plaintiff's note, there were conversations between Traxler and plaintiff regarding the matter. On December 15, 1924, Traxler, in plaintiff's office, told plaintiff that he expected soon to receive certain funds from his mother's estate, out of which he promised to pay his interest in a few days, and would begin reducing the principal the first of the coming year.   On February 10, 1925, Traxler went to plaintiff and paid $2,033 by two checks, one for $1,358 and the other for $675.   Traxler told plaintiff the money was "funds he got from his mother's estate." Traxler requested plaintiff to credit $1,358 as of December 7, 1924, and $675 as of February 10, 1925.

On December 22, 1924, Traxler wrote plaintiff not as an officer of the corporation, but signed the letter, "Dave," that he had been ill with "flu," but he hoped to be fully recovered after the holidays, "and I will give attention to the $16,500 mortgage."   In this letter, he also said:

"This is one of the first times in my career that I have been cornered like this, and I appreciate most kindly the patience that you have shown me.   You may rest assured that I will give this proper attention just as soon as I can get out to my business and collect in some money which is due me."

On January 14, 1925, Traxler wrote plaintiff:

"This is one of the first papers of my whole career that I have had to let stand like this, but I will take care of it properly just as soon as I get the money."

On January 21, 1925, he sent plaintiff the following letter:

"I will get something in the next few days, some money from my mother's estate, and will be able to take care of the long past-due interest.   I fully realize your position in the matter.   My delay is not of my own desire, but because I could not help myself.   However, I will have this money to pay, which will make you feel better and myself also."

In his report, the Master went fully into the question of

waiver by Traxler of the protest and dishonor, and we take the liberty to quote what, it seems to us, he so well said:

"This (notice of dishonor), however, may be waived before or after maturity. The Negotiable Instrument Law (Section 3733, Vol. 3, Code) expressly provides that presentment for payment may be dispensed with 'by waiver of presentment, express or implied,' and Section 3760, provides that 'notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied.' These sections have been discussed recently in the case of *Farmers' & Merchants' Bank* [of Lake City] *v. Brown,* 131 S. C., 265 [127 S. E., 365]' in which they quote from the cases of *Fell v. Dial,* 14 S. C., 247, and *Schmidt v. Radcliffe,* 4 Strob., 296 [53 Am. Dec., 678]; and the Court holds that 'an offer by the indorser of note to execute a renewal note, together with the maker, is sufficient evidence to sustain a finding of waiver of presentment and notice of dishonor under Negotiable Instrument Law, § 109 (Section 3760, Vol. 3, Code of Law 1922).

"In 3 R. C. L., page 1242, §469, it is said: 'The doctrine is well established that, if an indorser, with full knowledge that he has been discharged from liability by the failure of his indorsee to make proper demand and give due notice of nonpayment, promises to pay the note or acknowledges his liability therefor, he thereby binds himself and may be proceeded against as if his liability had been legally fixed in the first instance. Again, it is settled that a promise to pay furnishes presumptive evidence that the proper steps were taken to bind the one making the promise and dispenses with proof by the holder that demand was made and notice given.'

In the case of *Hall v. Freeman,* 2 Nott & McCord, 479 [10 Am. Dec., 621] S. C. Reports, Reprint, Book 5, page 192, our Court held: 'Where a demand has not been made

on the maker of a promissory note, and the indorser, under a knowledge of this fact, agrees to pay it, a presentment to the drawer will be presumed, and it is unnecessary to prove it.'

"There are quite a number of other old cases in this State which hold that demand for payment and notice of nonpayment may be waived by the indorser's agreeing to pay the note after maturity thereof, as well as before, among them being *Fell v. Dial,* 14 S. C., 247; *Matthews v. Fogg,* 1 Rich., 369 [44 Am. Rep., 257]; *Schmidt v. Radcliffe,* 4 Strob., 296 [53 Am. Dec., 678].

"The plaintiff testified that, in the conversations which he had with the indorser, D. B. Traxler promised to pay this indebtedness, and stated that he was to get certain money from his mother's estate, which he would use for this purpose. The letters introduced in evidence above referred to corroborate the plaintiff's testimony and show conclusively to my mind that Mr. Traxler admitted his liability on this note by agreeing to pay the same, and that he is estopped to take the position that he was released from liability on said note as indorser on account of any failure to make demand on the maker or to give due notice of dishonor of said note as required·by the Negotiable Instrument Law. Therefore, ·* * * the oral testimony of Mr. Martin, which is uncontradicted, was sufficient to show waiver on the part of Mr. Traxler. I, therefore, hold that he is personally liable for the payment of the note, as well as the maker."

There is little need to add to what Master Inman has said. However, because it seems so appropriate here, we do quote from the opinion of Mr. Justice Cothran in *Bewley-Darst Coal Co. v. Laurens Gin & Fuel Co.,* 126 S. C., 219; 119 S. E., 589:

"The reason of the statute requiring prompt notice of dishonor to be given to the indorser, is to enable him to act

promptly in the protection of his interests. 'All the rules of diligence applicable to negotiable instruments are designed for the security of the parties secondarily liable, and, when demand or notice is not necessary for their protection, it· is dispensed with.' 3 R. C. L., 1180. A verbatim quotation from the case of *Chadwick v. Jeffers,* 1 Rich., 397; 44 Am. Dec., 260. That case further holds: "These cases proceed on the ground that notice is not material to the indemnity of the indorser or drawer, because, either he has already done that which notice would have warned him to do, or that notice is unnecessary to his protection.' Each note referred to the debt of $3,698.39, and contained the acceleration provision. When the indorsers received notice of the nonpayment of the first note, they were necessarily notified that the other notes matured, and had not been paid, and were in as perfect a position to protect their rights as if seven separate notices had been mailed to them. The law does not contemplate or require the doing of a vain thing."

The uncontradicted evidence in this cause shows that Traxler, for all practical purposes, owned the corporation that made the note; that he transferred his interest in the contract for the purchase of plaintiff's land to the corporation; that he spoke and wrote of the obligation, which plaintiff held, as his own; that he knew the note was not paid; and that the corporation could not, or would not, make payment. He had full knowledge of all that the notice of dishonor could have possibly given him.

Again, all the transactions between Traxler and the plaintiff, and the execution of the papers by the corporation, seem, from the testimony, to have been for Traxler's accommodation and benefit. Section 3731, Vol. 3, Code of 1922 (Negotiable Instrument Act), is as follows:

"Presentment for payment is not required in order to charge an indorser where the instrument was made or ac-

cepted for his accommodation, and he has no reason to expect that the instrument will be paid if presented."

The last position of the appellants for review concerns the allowance by the Master and Circuit Judge of a fee of $1,000.00 as attorney's fees. It is urged that this fee was excessive, and, in fact, no fee should have been allowed under the circumstances, especially against Traxler, the indorser. The appellants seem to think that the suspension of the action by the plaintiff, and the failure, after the expiration of the suspension period, to make further requests for payment of the debt, should excuse the defendants from the payment of attorney's fees, particularly Mr. Traxler. The note provided for 10 per cent. attorney's fees. We cannot agree with the contentions of the appellants. What we have said before regarding the suspension of the action is sufficient to answer the effect of that upon the matter of attorney's fees.

It is our opinion also that the fee allowed in the case at bar was not excessive. There was due on the note, both principal and interest, according to the Master's calculation, $17,872.18. The defendants answered, they amended their answer, objected to plaintiff amending his complaint; there were several references held; defendants excepted to the Master's report, and finally appealed from the decree of the Circuit Judge. At every stage, the plaintiff has been delayed and resisted in his efforts to collect the money due him for the land he sold. His attorneys have rendered well much professional service, due to the able and presistent contest made by the attorney for the defendants. Debtors brought into Court, who evidence a desire not to hinder and delay their creditors, are entitled to great consideration in the fixing of attorney's fees. On the other hand, debtors who oppose the legal efforts of their creditors to recover their honest dues should be required to pay higher attorney's fees, for the very excellent pur-

poses of encouraging the payment of debts, and discouraging unnecessary litigation among our citizens.

It is the judgment of this Court that all the exceptions of the appellants, and each of them, be, and the same are hereby, overruled, and the decree of the Court of Common Pleas of Greenville County, affirming the Master's report herein, be, and the same is hereby, affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.